

ROBERT M. DOWLING, Ph.D.

CLINICAL AND FORENSIC PSYCHOLOGIST
2005 West Eighth Street, Suite 202
Erie, Pennsylvania 16505
Telephone: (814) 459-6858
Fax: (814) 459-6401

# PSYCHOLOGICAL EVALUATION

NAME: Leon F. Akerly, II
AGE: 38 years

DATE OF BIRTH: March 13, 1968
DATES SEEN: Jan. 25, Feb. 1, Mar. 29, Apr. 12, May 2, 2006

**TECHNIQUES USED:** Clinical interview; Bender Visual Motor Gestalt Test; Shipley Institute of Living Scale; Hare Psychopathy Checklist-Screening Version; Psychopathy Personality Inventory-Revised; Millon Clinical Multiaxial Inventory-III; Minnesota Multiphasic Personality Inventory-2; Parent-Child Relationship Inventory; Sentence Completion Blank; Hand Test; Rorschach Technique; Interview with M. Akerly and D. Akerly, client's children.

**DOCUMENTS REVIEWED:** From Harbor Creek School District: client's academic records dated 1981-1983. From Mercyhurst Preparatory School: client's academic records dated 1982-84. From Tallahassee Community College: client's academic records dated 1989-91. Psychiatric Report dated 11/22/93 signed by Dr. M. Tronetti. From the Court of Common Pleas, Erie County Pennsylvania: Petition for Consent Order re 1659 MISC 1993 dated 2/1/94 to 5/25/94 signed by C.D. Neish, Dep. Atty. General, L.F. Akerly, S.M. Watral, I. Murray, Esq., D.E. Lewis, Esq.; Consent Order re 1659 MISC 1993 dated 6/10/94 signed by Hon. S. Domitrovich. From Hamot Medical Center: client's medical records dated 2/28/05 to 3/1/05. From Children's Hospital of Pittsburgh: health record notes re D. Akerly dated 12/19/03 to 2/10/04. From Wattsburg Area School District: academic & health records of D. Akerly dated 10/7/01 to 10/28/04; academic & health records of M. Akerly dated 8/30/99 to 10/20/05. From U.S. District Court for the Western District of Pennsylvania: Indictment re Criminal No. 05-25 signed by M.B. Buchanan. From U.S. Probation & Pretrial Services Office: Presentence Investigation Report dated 3/29/06 signed by D.J. Conde and G.R. Buban. Undated letter from S. Akerly to K. Klapsino, Esq.

## BACKGROUND INFORMATION

Mr. Leon Akerly was referred for psychological evaluation by Attorney Leonard G. Ambrose who is representing him in connection with federal charges of gun possession stemming from an incident which occurred on February 28, 2005. On that date Mr. Akerly was the victim of a home invasion during which he received serious head and upper body injuries requiring emergency room treatment. (Four of the perpetrators of this crime were subsequently found guilty of aggravated assault and related crimes and are currently serving prison sentences.) During the investigation of this incident the Pennsylvania State Police discovered guns in Mr. Akerly's home and also learned that he was convicted of a felony in 1993 (a drug possession with intent to deliver as the result of selling marijuana to a undercover police officer). The State Police informed federal authorities of their findings resulting in the current charges to which Mr. Akerly has entered a guilty plea. A sentencing hearing is scheduled in the near future.

Mr. Akerly was raised in the Erie, Pennsylvania area, the younger of two children born to parents who continue to remain together. The father is the owner of North America Powder Coatings, a business which employs, at various times, from 8 to 20 people. Mr. Akerly has worked in this family business for many years and reported that he now virtually "runs it all" on behalf of his 77 year old father.

EXHIBIT 23

AKERLY/AMBROSE                                                                                                   2

In 1993 he was married to Stacy Watral. Six years later the couple separated with divorce proceedings begun but never completed. Two children, Megan, now twelve years old, and Damon, now 10, were born of this marriage. Custody disagreements followed the parental separation but for the past five years the children have lived with Mr. Akerly while having regular visits with their mother.

The custody disputes led to Mrs. Akerly to obtain a protection from abuse order against Mr. Akerly which he violated on two occasions. Subsequently, however, in a letter to her attorney she requested that the court order be "terminated" writing that, "I am in no need for protection. I am not in any kind of danger...some of the things I said were untrue. I think I might have been experiencing a nervous breakdown."

Mr. Akerly was arrested when he violated the PFA and these are the only criminal charges in his record other than his drug conviction in 1993.

Beginning at age 14 Mr. Akerly became heavily involved in drug and alcohol abuse with resulting poor academic performance and eventual withdrawal from school. He subsequently obtained a General Equivalency Diploma and for two years took classes at the Tallahassee Community College in Florida without, however, obtaining a degree. In spite of several attempts at drug and alcohol counseling, his drug use continued at least until his arrest in 1993 at the age of twenty-four.

At the time of the drug conviction a psychiatric evaluation was requested by his attorney for the purpose of developing sentencing recommendations. In his report Dr. Michael Tronetti focused on the effects of Mr. Akerly's substance abuse on his emotional state and cognitive functioning. None of these findings are seen as relevant at the present time. Drug and alcohol treatment was recommended with which Mr. Akerly was compliant.

During the current evaluation he was pleasant and cooperative. Adequate effort was put forth on all of the tasks presented and the test findings are considered to accurately reflex his psychological makeup.

## INTERVIEWS WITH THE AKERLY CHILDREN

Megan and Damon were interviewed on the afternoon of April 18, 2006. In a bizarre and apparently totally unrelated incident, Mrs. Akerly was brutally murdered early in the morning of that same day. Neither they nor I were aware of their mother's death since her body was not discovered for several days.

Each child reported very positive feelings for both parents and expressed satisfaction with the present custody arrangements. Also, they each reported recent decreases in their usually good grade performance in school. This is considered most likely an expression of concern about their father's welfare as well as worry about their own care should he be incarcerated.

Megan is an outgoing, pleasant young lady with typical preteen mannerisms and concerns. When queried about what she likes to do she said, "I talk on the phone a lot to my friends." When asked if she was one of the popular kids at school, she replied, "You could say that." She drew a picture of her family that included herself, her brother, her father and two dogs. She described

AKERLY/AMBROSE                                                                                          3

her mother as "loving" and her father as "the best dad in the world." While conveying annoyance at her "little brother", she also gave voice to fears over the possibility of his getting hurt because of his medical condition. While expressing confusion about who would care for her and her brother should her father go to jail, she spontaneously added, "Mom can't do it, she can only take us for a short time and neither can my grandmother-she's too old."

Damon presented as a somewhat serious young man who seemed rather unsure of himself in the interview situation. He was soft-spoken and somewhat reticent. His family drawing, like that of his sister's, contained the dogs and the other family members but he also included a picture of his mother. He said that he has friends he "hangs out with" mostly playing video games. Damon has a medical condition known as autoimmune hepatitis which causes his immune system to attack his liver cells. His treatment, which is under the direction of the Pediatric Gastroenterology Clinic at Children's Hospital of Pittsburgh, requires that he take daily doses of potent drugs designed to suppress the activity of his immune system. In addition, he needs additional medication to control the negative side effects of the immunosupressant drugs. It is necessary that his local physician be contacted should he show any signs of an infection of any type, allergy, fatigue, or stomach upset as his condition can lead to severe reaction to common illnesses. Because of this he has missed quite a bit of school. Furthermore, he is not permitted to engage in any contact sports. He needs to be seen at the clinic in Pittsburgh several times a year which he does not look forward to because of the extensive blood work involved. Additionally, he faces the prospect of a liver transplant in his teen years.

## TEST FINDINGS AND INTERPRETATION

Mr. Akerly is a man whose level of intelligence extends into the upper half of the average range. He shows no test evidence of cognitive processing problems in spite of past extensive drug use and a recent serious head injury,

He is capable of applying good organizational and planning skills to his endeavors but nevertheless is frequently subject to poor judgment and decision making as a consequence of a variety of personality deficits. These include a degree of social and emotional immaturity, a basic self-dissatisfaction, a tendency to externalize blame, somewhat poor emotional control skills and weak personal relationship skills.

His self-dissatisfaction stems from problematic situations resulting from his tendency to think before acting. At one level he blames others for this but at a deeper level there is self-blame which generates a chronic feeling of uneasiness with himself and his life circumstances. His impulsivity can lead him to do things which he genuinely regrets but his difficulty in delaying gratification can lead to a repetition of similar behavior. He has harbored hopes for self-improvement but has not been able to bring together the internal resources necessary to accomplish long range goals.

A basic shyness and discomfort in social situations is present which makes it difficult for him to develop and maintain close relationships. He is not particularly sensitive to the needs of others and in close relationships can become dependently demanding and irritable when his demands are not met. Anger associated with his self-dissatisfaction can easily be directed at his partner in such a relationship.

*CONFIDENTIAL   INFORMATION   FOR   PROFESSIONAL   USE   ONLY*

AKERLY/AMBROSE                                                                                          4

These personality problems are chronic but his employment and parenting history in the past several years would suggest an increase in his ability to handle life stresses as well as improvement in his overall level of social and emotional maturity.

His present legal problems have resulted in an increase in his self-dissatisfaction to the point of the development of a significant degree of anxiety and depressive symptoms. These reactions, although quite disconcerting for Mr. Akerly, are further indications of a decreased tendency to act out under stress and an increased ability to accept responsibility.

On the Parent-Child Relationship Inventory (in which his responses to items describing interactions with and attitudes towards his children are compared to those of a representative sample of fathers-and which includes scales for identifying social desirable and inconsistent responding) Mr. Akerly obtained above average scores on measures of parental satisfaction, setting limits, and involvement with and ability to communicate with his children. An average range score was observed on a scale dealing with the encouragement of autonomy and a below average score, not surprisingly, was seen on a measure of satisfaction with spousal support.

On the screening version of the Hare Psychopathy Checklist Mr. Akerly obtained a score below the cutoff used to indicate the possible presence of psychopathy. Additionally, on the revised Psychopathy Personality Inventory he obtained a score at the 30th percentile in comparison to an age-matched representative sample of adult males and at the 14th percentile in comparison to an offender sample.

## SUMMARY AND OPINION

Leon F. Akerly is a man of slightly above average intelligence who has a variety of personality difficulties which generate adjustment problems in several areas of his life. Emotional immaturity and impulsivity lead to problematic behaviors and thence to a chronic and significant degree of self-dissatisfaction. In spite of a degree of self-centeredness and a tendency to externalize blame, no evidence of the presence of significant psychopathic personality traits was seen on any of the test administered. At present he is experiencing clinically significant symptoms of anxiety and depression in reaction to his current legal problems.

In light of the current findings it is considered unlikely that incarceration will have a significant rehabilitative effect. There are no indications either in the test findings or in his recent history to suggest that he represents a danger to society. On the contrary, it would appear that he has functioned well, at least for the past five years, both occupationally and as a parent. In consideration of this it would seem that society would be better served, and the needs of his children better met, by a sentence that requires him to continue to meet these responsibilities while satisfying other probationary conditions.

Robert M. Dowling, Ph.D.
Clinical and Forensic Psychologist
May 11, 2006

*CONFIDENTIAL    INFORMATION   FOR   PROFESSIONAL   USE   ONLY*