1                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA
2

3    UNITED STATES OF AMERICA,        :
                                      :
4         v.                          :   Cr. No. 05-00025 E
                                      :
5    LEON F. AKERLY, II               :

6

7

8

9          Change of Plea Hearing in the above-captioned

10       matter held on Tuesday, December 6, 2005, commencing

11       at 2:30 p.m., before the Honorable Maurice B. Cohill,

12       Courtroom A, United States Courthouse, 17 South Park

13       Row, Erie, Pennsylvania 16501.

14

15

16

17   For the United States of America:
          Christine A. Sanner, Esquire
18        Office of the United States Attorney
          17 South Park Row, Room A330
19        Erie, PA 16501

20   For the Defendant:
          Leonard G. Ambrose, III, Esquire
21        Ambrose Friedman & Weichler
          319 West 8th Street
22        Erie, PA 16501

23

24
                  Reported by Janis L. Ferguson, RPR
25              Ferguson & Holdnack Reporting, Inc.

1

1          THE COURT:  This is the time set for a hearing on

2     a change of plea by Leon F. Akerly, II.  And as I understand

3     it, Mr. Ambrose, your client has indicated a desire to

4     change his plea.

5          MR. AMBROSE:  That is correct, Your Honor.  He's

6     here present today.

7          THE COURT:  I'd like everybody to come forward,

8     please.  Will you administer the oath, please.

9

10        L E O N  F.  A K E R L Y, II, first having

11            been duly sworn, testified as follows:

12

13                         EXAMINATION

14    BY THE COURT:

15

16        Q.   Would you state your fame for the record, please.

17        A.   Leon Akerly.

18        Q.   Okay.  And, Mr. Akerly, do you understand that

19    I've got to ask you a number of questions here?  And if at

20    any time you want to consult with Mr. Ambrose, please say

21    so, because it's valid -- it's essential to a valid plea

22    that you understand each question before you answer.

23             Do you understand that?

24        A.   Yes, Your Honor.

25        Q.   Okay.  Do you understand that now that you have

1    been sworn and your answers to my questions are now being

2    given under oath, that you would be subject to the penalties

3    of perjury or of making a false statement if you don't

4    answer truthfully?

5          A.    Yes, I do, Your Honor.

6          Q.    What is your date of birth?

7          A.    March 13th, 1968.

8          Q.    And what is your address?

9          A.    10680 Station Road, Erie, Pennsylvania -- North

10   East, Pennsylvania.  I'm sorry.

11         Q.    How far did you go in school?

12         A.    I graduated high school.

13         THE COURT:  Mr. Ambrose, have you been able to

14   communicate with your client in the sense that you believe

15   he understands you and you understand him?

16         MR. AMBROSE:  Yes, Your Honor.

17   BY THE COURT:

18         Q.    Mr. Akerly, are you currently or have you recently

19   been under the care of a physician or a psychiatrist?

20         A.    No, sir, I haven't.

21         Q.    Have you been hospitalized or treated for a

22   narcotic addiction?

23         A.    No, sir.

24         Q.    Have you been hospitalized or treated for alcohol

25   abuse?

1          A.    No, sir.

2          Q.    Have you ever been hospitalized or treated for any

3    sort of mental illness?

4          A.    No, sir.

5          Q.    Are you under the influence of any narcotic drug,

6    medicine, pills, or alcoholic beverage today?

7          A.    No, I am not, Your Honor.

8          Q.    Have you taken any drugs, medicine, or pills or

9    drank any alcoholic beverages in the past 24 hours?

10         A.    No, sir.

11         Q.    How do you feel physically and mentally right now?

12         A.    Pretty good.

13         Q.    Do you clearly understand exactly what's happening

14   here now?

15         A.    Yes, sir, I do.

16               THE COURT:  Do either of you attorneys have any

17   doubt as to Defendant's competence to plead at this time?

18               MR. AMBROSE:  I have none, Your Honor.

19               MS. SANNER:  No, Your Honor.

20               THE COURT:  Based upon your answers to the

21   foregoing questions, we find that the Defendant is competent

22   to plead.

23   BY THE COURT:

24         Q.    Have you had an ample opportunity to discuss your

25   case with Mr. Ambrose?

1        A.    Yes, sir, I have.

2        Q.    Have you told him all of the facts in connection

3    with the charges?

4        A.    Yes, sir, I have.

5        Q.    Are you satisfied with the job that he's done for

6    you?

7        A.    Absolutely, yes.

8        Q.    Before we get into the -- what actually happened

9    in this case, Mr. Akerly, I want to go over with you just

10   what your rights would be if this case were to go to trial.

11           First of all, do you understand that under the

12   Constitution and laws of the United States, you are entitled

13   to a speedy and a public trial by a jury on the charges

14   contained in the indictment?

15       A.    Yes, I understand.

16       Q.    Do you understand that you have the right to an

17   attorney at every stage of the proceedings in your case, and

18   that if at any time you can't afford an attorney, one will

19   be provided for you without charge?

20       A.    Yes, sir.

21       Q.    Do you understand that at your trial, you would be

22   presumed to be innocent, and the Government would be

23   required to prove you guilty by competent evidence and

24   beyond a reasonable doubt to the satisfaction of the Judge

25   and the unanimous jury?

1        A.    Yes, sir.

2        Q.    Do you understand that being presumed to be

3    innocent means that you would not have to prove that you

4    were innocent?

5        A.    Yes, sir.

6        Q.    Do you understand that at the trial, the witnesses

7    for the Government would have to come to court and testify

8    in your presence, and your attorney or you could

9    cross-examine the witnesses for the Government, object to

10   evidence offered by the Government, and offer evidence on

11   your behalf?

12       A.    Yes, sir.

13       Q.    Do you understand that at the trial, you would be

14   entitled to compulsory process to call witnesses; that is,

15   you could subpoena witnesses and compel them to come to

16   court to testify for you?

17       A.    Yes, sir, I do.

18       Q.    Do you understand that at the trial, you would

19   have the right to testify, if you chose to do so, but you

20   would also have the right not to testify, and no inference

21   or suggestion of guilt can be drawn from the fact that you

22   did not testify?

23       A.    Yes, sir.

24       Q.    If you do enter a plea of guilty today, do you

25   understand that you will be waiving your right to a trial

1    and the other rights that I have just described, and there

2    will not be a trial of any kind, and I will enter a judgment

3    of guilty and sentence you on the basis of your guilty plea

4    after considering a presentence report?

5        A.    Yes, sir.

6        Q.    If you do enter a plea of guilty today, do you

7    also understand you will have to waive your right not to

8    incriminate yourself, since I will ask you questions about

9    what you did in order to satisfy myself that you are guilty,

10   and you will have to acknowledge your guilt on the record?

11       A.    Yes, sir.

12       Q.    Do you understand that any statements regarding

13   the offense that you may have made to the U.S. Attorney

14   during the course of any plea negotiations could not be used

15   against you in a trial of this case?

16       A.    Yes, sir.

17       Q.    Having discussed these rights with you, is it

18   still your wish to enter a plea of guilty today?

19       A.    Yes, it is, Your Honor.

20       Q.    I want to go over with you now the indictment and

21   the possible penalties here, Mr. Akerly.  And I take it you

22   and Mr. Ambrose have discussed the indictment that was filed

23   here?

24       A.    Yes, sir.

25       Q.    This charges you with having been convicted in

1    Common Pleas Court of Erie in 1993.  You were convicted of

2    violating the Controlled Substance, Drug, Device, and

3    Cosmetics Act by committing the crimes of possession with

4    the intent to deliver and unlawful delivery of drugs.  And

5    in this case, the charge is that you knowingly did possess

6    in and affecting interstate commerce firearms, as defined in

7    Title 18, United States Code, Section 921(a)(3).  And now

8    I'm reading from the indictment.

9         You possessed specifically a Beretta .22 caliber

10   pistol and an SWD Cobray, C-O-B-R-A-Y, Model M-11

11   9-millimeter pistol, a firearm as defined in Title 18,

12   United States Code, Section 921(a)(5); specifically, a

13   Winchester Model 13 12-gauge shotgun, a firearm as defined

14   in Title 18, United States Code, Section 921(a)(7),

15   specifically a Ruger, R-U-G-E-R, Model 10/22 carbine .22

16   caliber rifle.

17        Those are the charges.  Do you understand that?

18     A.   Yes, sir.

19     Q.   Now, I want to go over with you next just what it

20   is the Government would have to prove if this case were to

21   go to court.

22        In any criminal case, there are so-called elements

23   of the crime which the Government has to prove beyond a

24   reasonable doubt.  And the shorthand version of what you're

25   charged with here is possession of a firearm by a convicted

1    felon.  And the Government would have to prove, first of

2    all, that you have been convicted of a crime punishable by

3    imprisonment for a term exceeding one year, and that refers

4    back to the Common Pleas conviction.  Secondly, that you

5    thereafter possessed a firearm.  And, third, that the

6    firearm was possessed in or affecting interstate commerce.

7    And that means that at some time in its life it had crossed

8    a state line.  Do you understand that?

9         A.    Yes, sir.

10        Q.    Okay.  Now, the penalties here, we concern

11   ourselves with two kinds of penalties.  First of all, what

12   does the statute say, what does the Criminal Code say about

13   this crime, and then, secondly, what do the so-called

14   Sentencing Guidelines have to say.

15             First of all, the statute calls for a term of

16   imprisonment of not more than 10 years, but if it's

17   determined that the Defendant has three previous convictions

18   for a violent felony or serious drug offense or both, then

19   the term of imprisonment is not less than 15 years, to a

20   maximum of life in prison, a fine of not more than $250,000,

21   and a term of supervised release of three years or five

22   years, if the -- more than one prior conviction applies.

23   And, also, the Court has to impose a special assessment of

24   $100.  We can't waive that.  We have to -- have to impose

25   that.

1           Now, that's what the statute says.  You understand

2    that?

3        A.    Yes, sir, I do.

4        Q.    Okay.  Now, also we have to look at the so-called

5    Sentencing Guidelines.  And the Supreme Court has said that

6    those guidelines aren't absolutely binding on the District

7    Courts, but we do have to look to them to get some idea what

8    the sentence ought to be.  Do you understand that?

9        A.    Yes, sir, I do.

10        Q.    Okay.  And have you and Mr. Ambrose talked about

11    how the Sentencing Guidelines might apply in your case?

12        A.    Yes, we have.

13        Q.    I won't be able to determine the Guideline

14    sentence for your case until after the presentence report

15    has been completed and you and the Government have had an

16    opportunity to review it, and if there's anything in there

17    that you disagree with, you'll have an opportunity to

18    challenge that.  Do you understand that?

19        A.    Yes, sir.

20        Q.    Do you understand that the sentence might be

21    different from what either your attorney or the United

22    States Attorney predicted?

23        A.    Yes, sir, I do.

24        Q.    Do you understand that after it's been determined

25    what guideline applies in the case, the Judge has the

1    authority in some circumstances to impose a sentence that's

2    more severe or less severe than the sentence called for by

3    the Guidelines?

4          A.    Yes, sir.

5          Q.    Do you understand that under some circumstances,

6    you or the Government may have the right to appeal any

7    sentence that I might impose?

8          A.    Yes, I do, Your Honor.

9          Q.    Do you understand that parole has been abolished,

10   and if you are sentenced to prison, you will not be released

11   on parole?

12         A.    Yes, sir.

13         Q.    Mr. Akerly, has anyone threatened you or anybody

14   else or in any way forced you to plead guilty in this case?

15         A.    No, sir, they haven't.

16               THE COURT:  Mr. Ambrose, has he made any

17   confession to the police or other representatives of the

18   Government concerning this matter?

19               MR. AMBROSE:  Not that I'm aware.

20               THE COURT:  Do you agree with that, Miss Sanner?

21               MS. SANNER:  Yes, Your Honor.

22               THE COURT:  Has there been a plea agreement

23   entered into here?

24               MS. SANNER:  There is no plea agreement in this

25   case.

1          MR. AMBROSE:   This is an open case, Your Honor.

2     BY THE COURT:

3          Q.   Do you understand, Mr. Akerly, that any

4     recommendation of sentence that might have been agreed to by

5     your lawyer and the prosecution or any agreement by the

6     Government not to oppose your attorney's requested sentence

7     is not binding on me, and you might, on the basis of your

8     guilty plea, receive up to the maximum sentence permitted by

9     law?

10         A.   Yes, sir, I do understand.

11         Q.   Do you understand that if I choose not to impose

12    the sentence that might be recommended by the Government or

13    by your lawyer and impose a more severe sentence, you will

14    not be entitled to withdraw your guilty plea?

15         A.   Yes, sir, I do.

16         Q.   Has anyone made any prediction or promise to you

17    as to what the sentence will be?

18         A.   No, sir.

19         Q.   Have any out-of-court promises, representations,

20    or agreements been made which require you to respond

21    untruthfully to any of my questions?  For instance, has

22    anyone told you to tell me that no promise of leniency was

23    made when, in fact, a promise was so made?

24         A.   No, sir.

25         Q.   Do you understand that you may not at a later date

1    after today claim there were any promises, representations,

2    agreements, understandings, or threats made by any person

3    that motivated or caused you to enter this plea, other than

4    those that you had the opportunity to tell me about here and

5    now in open court?

6        A.    Yes, I understand.

7        Q.    Do you understand that no one can make promises

8    for me as to how I should dispose of the case?

9        A.    Yes, sir, I do.

10       Q.    Has anyone promised or predicted leniency with

11   respect to any sentence I might impose?

12       A.    No, sir.

13       Q.    This is very important, because if anyone has

14   predicted or promised leniency, I'm putting you on notice

15   that any representation they may have made is not binding on

16   me, and I will sentence you according to my own conscience

17   and following the law.

18            Do you understand that?

19       A.    Yes, sir, I do.

20       Q.    What made you decide to plead guilty, Mr. Akerly?

21       A.    I possessed the firearms.

22       Q.    Did you discuss pleading with Mr. Ambrose?

23       A.    Yes, sir.

24            THE COURT:  I'm going to ask Miss Sanner now to

25   tell me what she expects the Government to be able to prove

1   here, and then I'm going to ask you and Mr. Ambrose if you

2   agree with her statement.

3          MS. SANNER:  Your Honor, if this case had

4   proceeded to trial, the United States would present evidence

5   and testimony showing that the Defendant is a convicted

6   felon for drug violations and was discovered in possession

7   of firearms listed in the indictment on February 28th, 2005.

8          Testimony from the Pennsylvania State Police

9   would show that on February 28th, 2005, officers responded

10  to a 911 call that was made from Mr. Akerly's home.  Upon

11  their arrival, the police learned that Mr. Akerly's home had

12  been invaded by individuals, that an altercation had ensued,

13  and that the individuals ultimately fled his home on foot

14  and that Mr. Akerly discharged a Winchester Model 1300

15  shotgun in their direction.  Pennsylvania State Police saw

16  the shotgun and spent ammunition, and they obtained a search

17  warrant to process Mr. Akerly's home as a crime scene.

18  During the search, three additional firearms listed in the

19  indictment were found.

20          Testimony from an agent from the Bureau of

21  Alcohol, Tobacco, Firearms, and Explosives would show that

22  the firearms moved in or affected interstate commerce.  And

23  the records custodian would testify that the Defendant has

24  been convicted of a crime punishable by a term of

25  imprisonment exceeding one year.

1               And that would be the sum of the Government's

2   evidence at trial.

3          THE COURT:  Is that a fair statement of what

4   happened here, Mr. Akerly?

5          MR. AMBROSE:  Your Honor, if the Court please,

6   there was a home invasion by five individuals of his house,

7   and they were charged with burglary, robbery, and aggravated

8   assault --

9          THE COURT:  They got the people that did that.

10          MR. AMBROSE:  They have all been convicted and

11   sentenced by Judge Trucilla to 10 to 20 years.  His

12   girlfriend had called 911, and when the State Police came

13   in, of course, at some point in time they did a record

14   check.  And then, of course, the shotgun was used to get the

15   people out of the house.  And then, of course, ATF.  He was

16   convicted of possession of marijuana in State Court, and as

17   the Court knows, you call it a misdemeanor in State Court,

18   but it's a felony in Federal Court if it's greater than a

19   year.  And he was in possession of the guns.  We make no

20   bones about it.  Under federal law, obviously, a person's

21   belief of what the law is, is not what's relevant.  It's

22   more a statutory crime.

23          THE COURT:  Have they summarized the facts

24   regarding the incident and the reason for the call for the

25   State Police?

1        MR. AKERLY:  Yes, sir.

2        THE COURT:  But you do agree that you possessed

3    those weapons?

4        MR. AKERLY:  Yes, sir, I did.

5        MR. AMBROSE:  And he was subpoenaed to testify in

6    THE proceedings regarding these other individuals in State

7    Court, Your Honor.

8        THE COURT:  Reviewing all these things that we

9    have discussed here today, is it still your wish to enter a

10   plea of guilty and waive your right to a trial by jury?

11       MR. AKERLY:  Yes, it is.

12       THE COURT:  Mr. Ambrose, from the facts that he

13   has told you, do you concur in his plea of guilty?

14       MR. AMBROSE:  I do, Your Honor.  Unfortunately, I

15   disagree with the law, but there's nothing I can do about

16   it.  I mean, the case law is pretty clear that the

17   Government does not have to prove, obviously, that he knew

18   what the law was.  That he was in violation of the law.

19       THE COURT:  Do you know of any reason he should

20   not plead guilty?

21       MR. AMBROSE:  I know of none, Your Honor.

22       THE COURT:  Do you have any question to ask me,

23   Mr. Akerly?

24       MR. AKERLY:  No, sir.

25       THE COURT:  Since you do acknowledge that you are,

1  in fact, guilty of the charge based in the indictment, you

2  know your right to a trial, what the maximum possible

3  punishment is, and that you are voluntarily pleading guilty,

4  I will accept your guilty plea and enter a judgment of

5  guilty on your plea, and I'll ask you to sign the

6  acknowledgment.

7           (Discussion held off the record.)

8           THE COURT:  We note that Mr. Akerly has signed the

9  endorsement, indicating he's withdrawing his plea of not

10  guilty previously entered, and is now pleading guilty.  He

11  signed that, and Mr. Ambrose has witnessed his signature.

12               I'm going to order a presentence report, and

13  Mr. Condi over at the table, he's the presentence -- he's

14  the officer who will be preparing the presentence report.

15  I'm sure Mr. Ambrose will agree that you should use your

16  best efforts to cooperate with him in furnishing information

17  for that report, because what the report says is going to be

18  important as to my ultimate decision as to what the sentence

19  will be.  You and Mr. Ambrose, of course, will have the

20  right to examine that report and comment on it at the time

21  of sentencing.

22               I have been given a sentencing date of

23  March 14th, 2006 at 1:30 p.m.  March 14th, 2006 at 1:30 p.m.

24               Does the Government have any objection to

25  present bond being continued?

1          MS. SANNER:  No objection, Your Honor.

2          THE COURT:  So you understand, then, that

3   sentencing will be on March 14th?

4          MR. AKERLY:  Yes, sir.

5          THE COURT:  Okay.

6

7          (Hearing concluded at 2:52 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25